**Application of George R. HARRIS.**

**Patent Appeal No. 7990.**

United States Court of Customs and Patent Appeals.

July 3, 1968.

H. F. McNenny, Cleveland, Ohio, William T. Estabrook, Washington, D. C. (McNenny, Farrington, Pearne & Gordon, Cleveland, Ohio, Kemon, Palmer, Stewart & Estabrook, Washington, D. C., of counsel), for appellant.

Joseph Schimmel, Washington, D. C. (Raymond E. Martin, Washington, D. C., of counsel), for Commissioner of Patents.

Before WORLEY, Chief Judge, and RICH, SMITH, ALMOND and KIRKPATRICK[*], Judges.

WORLEY, Chief Judge.

Harris appeals from the decision of the Board of Appeals which affirmed the examiner's rejections of claims 25–28 in his application [1] as "based upon an insufficient disclosure" and as "unpatentable over Soday [2] in view of Auer [3] under 35 U.S.C. 103."

---

* Senior District Judge, Eastern District of Pennsylvania, sitting by designation.

1. Serial No. 186,233, filed April 9, 1962 and entitled "Soft Rubber Composition."

2. U.S. Patent 2,436,457, issued February 24, 1948.

3. U.S. Patent 2,437,925, issued March 16, 1948.

The invention relates to a method of forming a soft rubber product by vulcanizing a composition comprising natural or synthetic rubber, a non-volatile plasticizer and a partially sulfur-vulcanized vegetable oil, as well as the product so produced. The specification points out that it is desirable to make a solid, dense rubber having the "softness" of sponge rubber but without the disadvantageous water absorption properties of that material. According to appellant:

Previous efforts to develop a solid, dense rubber having a high degree of softness by adding the various plasticizers to the rubber mix have not been successful in producing a dense rubber having the same degree of softness as sponge rubber. The principal difficulty along these lines has been that the production of a soft rubber requires the addition of such a large amount of plasticizer and softener that the material cannot be handled through the usual methods of extruding, molding, or calendering. Also, rubber softened with large quantities of plasticizer could heretofore be vulcanized only in a rigid mold or the like which maintains the article in the desired shape during the vulcanizing process. *Efforts to make extruded articles out of prior art soft rubber compositions have not been successful because if the article has internal passages or openings or thin wall sections, it is not possible to support these parts of the article during vulcanization and the heat will cause the rubber to become so soft as to lose its original shape and collapse or distort to such a degree that the article after vulcanization has lost its shape.* [Emphasis supplied.]

The use of a partially vulcanized vegetable oil as a component of the soft rubber compositions is said to obviate those difficulties and permit extrusion and vulcanization of an article without it losing its shape. Claims 25 and 26 are representative:

25. In the method of producing as a substitute for cellular sponge rubber a shaped, soft, non-cellular elastomeric body from a solid rubber containing a brown vulcanized vegetable oil and a plasticizer, the improvements of increasing the tolerance of the solid rubber to augmented amounts of the plasticizer and thereby providing a soft yet solid, vulcanizable elastomer while retaining sufficient stiffness to undergo a shaping operation prior to subsequent vulcanization, said improvements comprising:

(a) providing a conjugated diene polymeric rubber having a relatively high degree of unsaturation and therefore readily susceptible to a cross-linking reaction;

(b) forming an admixture consisting essentially in weight per cent of about 24 per cent to about 35 per cent of said rubber, about 17 per cent to about 25 per cent of a non-volatile plasticizer, about 30 per cent to about 50 per cent of a partially sulfur-vulcanized brown vegetable oil, the percentage of said brown vulcanized vegetable oil being substantially at least as great as that of said rubber, and sufficient elemental sulfur to provide substantial vulcanization of the rubber and further vulcanization of the partially vulcanized brown vulcanized vegetable oil;

(c) shaping said admixture to the form of said elastomeric body, said partially vulcanized vegetable oil being sufficiently vulcanized to impart stiffness to the shaped admixture in spite of the solubilizing effect of the plasticizer;

(d) heating the admixture to a temperature within the range of about 280° F. to about 350° F. to effect vulcanization of the rubber and additional vulcanization of the brown vulcanized vegetable oil with simultaneous interreaction between the rubber and vulcanized vegetable oil; and

(e) thereby producing a shaped, soft, non-cellular solid elastomer having a tensile strength from about

150 psi. to about 700 psi., and elongation from about 450 per cent to about 800 per cent, a Shore A durometer hardness of about 5 to about 25, and less than 0.5 per cent water absorption.

26. A shaped, soft, non-cellular elastomeric body made by the process of claim 25.

The examiner noted that Soday discloses natural or synthetic rubber compositions containing a blend of high boiling aromatic oils and sulfur-vulcanized brown vegetable oils. According to Soday, solid, rubber-like, sulfurized vegetable oils, known as "factice," had previously been "extensively employed in the rubber industry as softening agents" and greatly assist "in the milling, calendering, and/or extrusion" of rubber compositions. The amount of sulfur Soday utilizes to crosslink the vegetable oil depends on the "type of oil employed" and "the properties desired in the finished [oil] product." Smaller amounts of sulfur yield partially vulcanized viscous liquids and larger amounts yield solid, rubber-like products which are more completely crosslinked or vulcanized than the viscous liquids. As to the quantities of the particular aromatic oils and sulfurized vegetable oils which he employs in his rubber composition, Soday states:

> The proportion of such oils which may be incorporated in sulfurized oils may be varied over a very wide range depending, among other things, upon the properties of the sulfurized oil, and the properties desired in the resulting composition. In general, however, I prefer to employ compositions containing at least 10% of either component. Thus, compositions containing 10% sulfurized oil and 90% aromatic oils of the type described herein, as well as those containing 10% aromatic oils of the type described herein and 90% sulfurized oil, possess properties which render them particularly desirable for use in a number of commercial applications, * * *.

* * * * * *

The quantity of sulfurized oil-aromatic oil composition of the type described herein which may be incorporated in natural or synthetic rubbers, or elastomers, may be varied over very wide limits, depending upon the properties desired. Thus, for example, quantities varying from a few percent, or less, to an amount equal to, or greater than, the quantity of rubber, or rubber mixture, employed in the composition, may be used.

The examiner also observed Auer's discussion of the prior art:

> * * * brief reference is here made to the prior practice in use of factice, sometimes also called "rubber substitutes."

> Factice is commonly produced merely by vulcanizing a fatty oil with sulphur. The resulting vulcanized product was then employed in rubber mixes, during the compounding on the rubber mill. In general, the purposes for employing such factice are one or more of the following:

> 1. In the case of extrusion compounds, for instance for rubber tubing, *factice has been used to form a gel skeleton to prevent deformation of the tubing during vulcanization in open steam. The reason for this use is that factice does not appreciably change consistency at rubber vulcanization temperatures and, therefore, prevents deformation of the tubing during vulcanization.*

> 2. Factice has been used as a filler, for instance for the purpose of reducing the cost of the rubber compound whenever the factice price was cheaper than the rubber price.

> 3. Although factice has only a very minute plasticizing influence, it was sometimes used for this effect in rubber compounding.

> In addition to the above, it may be mentioned that plasticizers, such for

example as pine tar oil, mineral oils, etc., having a much more powerful plasticizing effect than factice, have been used in rubber mixes in order to reduce the stiffness of the mix on the mill and to act as a lubricant, thereby enabling incorporation of larger quantities of fillers than otherwise possible, or accelerating the milling operation, or both.

The quantity of factice and plasticizers which can be incorporated in the mix is, however, severely limited by the fact that they are not vulcanizable at the vulcanization temperature of rubber. Some plasticizers, in fact, are not vulcanizable at all. Therefore, *if these materials (factice and plasticizers) be added in large proportions, the original characteristics of the added material, especially the plasticizing characteristic, remains in the final product even after the final vulcanization thereof.* The desired physical properties of the rubber product are thereby considerably impaired. [Emphasis supplied.]

As his invention, Auer treated vegetable oil successively with sulfur dioxide, sodium hydroxide and sulfur to produce a material "which is both an extender and a plasticizer, having better plasticizing characteristics than factice." The sulfur treatment was carried out in such a manner as to yield only a *partially* vulcanized product. The latter "extender" composition was then added to rubber and the mixture subjected to further vulcanization, with the result that:

* * * upon the final vulcanization of the product, since the extender is vulcanizable at the same temperatures as the rubber, the vulcanization of the extender progresses and the extender concurrently loses at least a major portion of its plasticizing characteristic. * * *

* * * * * *

* * * the improved extender may even form a copolymer vulcanization product with the rubber, during the final vulcanization of the product.

"It would be obvious to one of ordinary skill in the art," said the examiner, "to use a large amount of softener in order to prepare a soft vulcanizate," regarding Auer's disclosure that soft vulcanizates are obtained from compositions containing large amounts of softener to support his position. It would also be obvious, he said, "to include factice, in whatever amount necessary, in the formulation to impart dimensional stability during vulcanization," in view of Auer. The examiner further regarded the "additional vulcanization of the brown vulcanized vegetable oil" and the "simultaneous interreaction between the rubber and vulcanized vegetable oil" recited in the claims to be "inherent in the vulcanization of the composition of Soday."

The board agreed, adding that Auer:

* * * clearly shows the use of a vulcanized vegetable oil which prior to its addition to the rubber mix has been sulfurized to a degree which is less than that desired in the finished rubber product and whereby the sulfurization of the oil is consummated at the time of the final vulcanization of the rubber product; * * *.

As appellant's specification points out, difficulty was encountered by prior workers in the art in attempting to form dense, soft, extruded rubber articles from prior art soft rubber compositions containing large quantities of plasticizer since the extruded article lost its shape upon vulcanization. We agree with the examiner and board that the prior art of record demonstrates that one of ordinary skill in the art would reasonably expect to solve that problem by incorporating a sulfur-vulcanized vegetable oil into the plasticized rubber composition. Soday points out that sulfurized vegetable oils greatly assist in the milling, calendering and/or extrusion of such compositions and Auer points out that they form a "gel skeleton" which "prevents deformation" of the extruded article during vulcanization when used in combination with plasticizer.

Appellant's main argument is that neither Soday nor Auer expressly discloses the use, in combination with rubber and plasticizing oils, of *partially* sulfur-vulcanized vegetable *oils* which crosslink with the rubber during vulcanization. He regards the sulfur dioxide-, sodium hydroxide-, and sulfur-reacted vegetable oils of Auer referred to by the board, though partially sulfur-vulcanized and capable of crosslinking with rubber, to be a *soap* not within the contemplation of the oils defined in his claims. In rejoinder, the solicitor urges the latter issue was not raised below and should not be considered here. Also aligned against appellant's arguments are (1) the finding by the board to the contrary and (2) the likewise contrary position taken by appellant's expert, one Finefrock, who stated in an affidavit of record:

> I have studied and am familiar with Auer Patent No. 2,437,925 and find that the disclosure therein is directed almost entirely to a method of producing vulcanized vegetable *oils*. * * * [Emphasis supplied.]

But even were appellant technically correct on the point of what the composition of Auer's invention is, we do not see what it would avail him. Auer's "soap," assuming that is what it is, possessed rubber plasticizing properties to greater extent than the prior art "factice" then in use, thus not necessitating the use of additional plasticizing oils. When vulcanized in combination with rubber, the "soap" lost its plasticizing characteristics. It is evident that Auer desired a harder rubber than appellant, regarding the plasticized product of the prior art which contained "factice" and plasticizer undesirable for his purposes.

We share the view of the examiner and board that one of ordinary skill in the art would find it obvious to use a sulfur-vulcanized vegetable oil in combination with a plasticizer if he desired to retain the softer characteristic of rubber attributable to the plasticizer. Appellant's specification attaches no particular significance to the use of a partially sulfur-vulcanized vegetable oil as opposed to the use of Auer's product or a completely sulfur-vulcanized vegetable oil, other than its function of crosslinking with the rubber which is obvious from Auer, and he thus is not in a favorable position to argue its criticality here.

The view we take renders it unnecessary to consider the rejection under 35 U.S.C. § 112.

The decision is affirmed.

Affirmed.